UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RODNEY DAMON BURSE,

    Defendant.

_____/

Case No. 13-20373

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**DENYING DEFENDANT RODNEY DAMON BURSE'S MOTION FOR**
**COMPASSIONATE RELEASE (Dkt. 159)**

Defendant Rodney Damon Burse pleaded guilty to (i) armed bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(d); and (ii) brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1), and 924(c)(1)(A)(ii). Judgment at 1 (Dkt. 76). On March 18, 2014, Burse was sentenced to 180 months' imprisonment. Id. at 2. Burse is currently incarcerated at Allenwood Medium Federal Correctional Institution in White Deer, Pennsylvania. His projected release date, which accounts for good conduct time, is May 25, 2026.

Burse now seeks compassionate release, arguing that he is at higher risk of severe illness from COVID-19 due to his age (45 years old), obesity (BMI 32.6), type 2 diabetes mellitus, and hypertension. Mot. at 10-11 (Dkt. 159). For the reasons that follow, the Court denies Burse's motion.

**I.   BACKGROUND**

On November 14, 2011, Burse and at least three accomplices robbed a bank located in Flint, Michigan. Plea Agreement at 5-7 (Dkt. 54). Burse acted as a lookout while his accomplices, who wore face coverings, entered the bank and, once inside, brandished pistols and shotguns to

place the bank employees in fear and make them turn over money. Id. at 6. They obtained approximately $15,903 and fled the scene. Id. at 7.

On April 30, 2012, Burse and at least four accomplices robbed a second bank located in Flint. Id. at 7-8. Burse again acted as a lookout while his accomplices, who wore face coverings, entered the bank, and brandished firearms to place the bank employees in fear and make them turn over money. Id. at 7. They obtained approximately $18,375 and fled the scene. Id. at 7-8.

On May 30, 2012, Burse and at least four accomplices robbed a credit union located in Flint. Id. at 3-5. Burse acted as the manager or supervisor of the robbery and encouraged or facilitated his accomplices' use and brandishing of the firearms to obtain the money. Id. at 5. The day before this robbery, Burse went to the credit union to "case it," meaning that he determined that the credit union was a suitable target for robbery. Id. at 4. On May 30, 2012, Burse and one of his accomplices parked outside of the credit union. Id. Using walkie talkies, Burse and the accomplice directed the other accomplices on the appropriate time to enter the credit union. Id. The other accomplices entered the credit union wearing face coverings and brandishing firearms. Id. They brandished the firearms to place the credit union employees in fear and make them turn over money. Id. They obtained approximately $379,932 and fled the scene. Id.

In total, Burse and his accomplices stole over $400,000. Although Burse was indicted on counts related to all three bank robberies, see First Superseding Indictment (Dkt. 33), he only pleaded guilty to the counts related to the third bank robbery that occurred on May 30, 2012, see Plea Agreement at 2. Nevertheless, Burse stipulated to committing the first and second bank robberies in his Plea Agreement. Id. at 5.

## II.     LEGAL STANDARD

The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003-1004 (6th Cir. 2020). Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must "find" that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

## III.     ANALYSIS

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a

3

defendant must point to specific conditions that create a higher risk that the defendant will contract and suffer severe illness from the virus. To determine whether a defendant's specific conditions render him particularly vulnerable to COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control ("CDC"). See Elias, 984 F.3d at 521.

Although Burse's age (45 years old) places him at a higher risk of infection, hospitalization, and death from COVID-19 than those below age 40, it does not place him at nearly as high of a risk as those above age 50.[1] Further, the CDC lists Burse's hypertension as a condition that "might" increase an individual's risk of severe illness of COVID-19, as opposed to a condition that does increase an individual's risk of severe illness from COVID-19.[2] However, the CDC lists Burse's other two medical conditions—obesity and type 2 diabetes—as conditions that increase an individual's risk of severe illness from COVID-19. See id. The Government argues that even if these two medical conditions provide an "extraordinary" reason for release, they do not provide a "compelling" reason for release because, among other reasons, obesity and diabetes are "prevalent" and "common ailments" amongst American adults. Resp. at 8-9.

The Court need not decide whether Burse has established extraordinary and compelling reasons for his release, as the § 3553(a) factors are dispositive in this case. See Ruffin, 978 F.3d at 1006 (a court's denial of compassionate release may be based on the § 3553(a) factors alone). Before granting a sentence reduction under the First Step Act, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses,

---

[1] See CDC, "Risk for COVID-19 Infection, Hospitalization, and Death By Age Group," https://perma.cc/QBZ8-Z6KR.

[2] See CDC, "People with Certain Medical Conditions," https://perma.cc/2Z52-3VGA.

the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.  Burse's offenses were undoubtedly serious.  On three occasions, he organized armed bank robberies.  Firearms were used in each robbery, placing the bank employees in fear and in danger.  In total, Burse and his accomplices stole over $400,000.  Burse has established, through his organization of and participation in multiple armed bank robberies, that he is a danger to the community.  Reducing Burse's sentence by five years would not promote respect for the law or protect the public from further crimes by Burse.

Although Burse argues that he "has committed himself to rehabilitation as evidenced by his participation in and completion of the various programs available to him," Mot. at 15, as the Government points out, many of these programs were required or recommended by the Court as part of Burse's sentence, Resp. at 6.  Further, the Bureau of Prisons has identified several outstanding areas of programming Burse needs to complete for rehabilitation purposes, including "Anger/Hostility."  See Inmate History, Ex. 1 to Resp. (Dkt. 162).  There are also some areas of programming that Burse has simply refused to be evaluated for, including "Antisocial Peers," "Trauma," and "Cognitions."  Id.  For these reasons, the Court finds that if Burse were released at this time, there is a real possibility that he would commit more crimes, specifically robbery.  This conclusion is bolstered by the fact that, up until November 2019, the BOP classified Burse's risk of recidivism as "high."  Id.  The BOP currently classifies Burse's recidivism risk as "medium," the second highest level of risk of recidivism.  Id.

In addition, several circumstances mitigate Burse's fears of contracting and suffering severe illness from COVID-19.  First, FCI Allenwood Medium, the facility at which Burse is incarcerated, currently has only one confirmed inmate case—and no staff cases—of COVID-19.[3]  Second, the

---

[3] See BOP, "COVID-19 Cases," https://perma.cc/5WZX-WSSL.

Government represents that the BOP "is working swiftly to vaccinate inmates." Resp. at 9.[4] And, because "doses are provided to inmates based on priority of need in accordance with CDC guidelines," Burse will be prioritized for vaccination over those who have no underlying medical conditions. Id.

Having considered the parties' briefs, exhibits, and all other relevant record materials, the Court determines that the § 3553(a) factors weigh against granting Burse release.

## IV. CONCLUSION

For the reasons stated above, Burse's motion for compassionate release (Dkt. 159) is denied.

SO ORDERED.

Dated: March 30, 2021　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2021.

　　　　　　　　　　　　　　　　　　　　　　　　s/Marlena Williams
　　　　　　　　　　　　　　　　　　　　　　　　In the absence of Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　　　Case Manager

---

[4] See also BOP, "COVID-19 Vaccine Implementation," https://perma.cc/5WZX-WSSL.